IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SHELLEY WOLF,

                        Plaintiff,                    OPINION AND ORDER

     v.

                                                            15-cv-47-wmc

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                        Defendant.

     Plaintiff Shelley Wolf seeks judicial review under 42 U.S.C. § 405(g) of a final decision of defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying her application for Supplemental Security Income and Social Security Disability Insurance benefits. On July 22, 2016, the court heard oral argument on plaintiff's contentions that the administrative law judge ("ALJ") erred in the following respects: (1) failing to obtain a valid waiver of counsel, resulting in prejudice; (2) failing to establish a proper foundation for the vocational expert's ("VE's") testimony; (3) failing to give adequate consideration to Wolf's obesity; and (4) failing to translate Wolf's specific limitations properly in concentration, persistence and pace (CPP) in the hypothetical presented to the VE. While finding that the ALJ adequately accounted for CPP limitations in his hypothetical, the court will remand for further development of the record with respect to Wolf's waiver of right to counsel, the impact of Wolf's obesity on her other limitations, and the foundation of the VE's testimony.

BACKGROUND

     Wolf claims a disability onset date of March 13, 2010, because of asthma and pain in her left arm, back and neck. (AR 58-59.) She was 46 years old at that time and

48 years old when she applied for benefits. Wolf completed three years of college and has past work experience in several positions involving light to medium work at an unskilled or semi-skilled level, including food preparation, cashier, emergency medical technician, and security guard. (AR 32-33, 48.) Wolf stopped working at a deli in August 2010 because her employer could not accommodate her limitations following an injury to her left forearm and wrist in March 2010. (AR 49-51.)

None of Wolf's treating physicians provided an opinion on her condition, although five different state consulting physicians provided opinions regarding her mental and physical limitations. Critical to Wolf's challenges is a February 14, 2013, Mental Residual Functional Capacity Assessment ("MRFCA") form in which Dr. Eric Edelman checked off boxes indicating that Wolf was moderately limited in a number of specific functions: (1) ability to understand, remember, and carry out detailed instructions; (2) maintain attention; (3) perform on a schedule; (4) complete a normal workday or work week without interruption; (5) perform at consistent pace; and (6) adapt to changes in work setting.[1] In the narrative section of the form, Edelman wrote under the category of "understanding and memory" that Wolf "cannot remember procedure for complex or detailed task [sic], but she can perform simple repetitive tasks;" under the category of "concentration and persistence" that Wolf "is capable of maintaining concentration and persistence to complete workdays and workweeks in performance of simple repetitive tasks;" and under the category of "adaptation" that

---

[1] SSA uses MRFCA forms to identify functional limitations. Section I of the form is a worksheet with 20 functions listed under the categories of "understanding and memory," "concentration and persistence," "social interaction," and "adaptation." POMS DI 24510.060. Section III of the form allows the reviewer to explain the mental RFC in a narrative statement. POMS DI 25020.010 (B)(1).

2

Wolf "[complains of] chronic pain, coupled with changes to routine, [which] may cause some difficulty dealing w[ith] work place stress, but can adjust to the settings that require simple repetitive tasks." (AR 104-10, 125.)

On July 24, 2013, the ALJ held an administrative hearing at which Wolf appeared without an attorney. At the outset of the hearing, the ALJ noted that, at a pre-hearing conference held off the record, he had already informed Wolf of her right to counsel and told her to read and sign a "Waiver of Representation" form. The ALJ also confirmed on the record that Wolf had read and understood the form and chose to proceed without an attorney. (AR 42-43.)

The ALJ issued a written decision on September 16, 2013, finding Wolf not disabled. While the ALJ found that Wolf was severely impaired by peripheral neuropathy, degenerative disc disease, asthma, obesity, affective disorder, and anxiety disorder, he determined that her impairments, alone or in combination, did not meet or equal the criteria for any listed impairment. (AR 25-27.) In reviewing the "B criteria" of the mental impairment listings specifically, the ALJ noted that Wolf had moderate limitations in: (1) CPP based on her self-reports of lack of concentration due to pain; (2) not always finishing what she starts; (3) feeling overwhelmed by stress; and (4) not adapting well to changes in her routine. (AR 26-27.)

The ALJ further determined that Wolf had the RFC to perform light work if limited to: (1) occasional overhead reaching and handling with her upper left arm; (2) no more than moderate exposure to irritants such as fumes, odors, dusts, and gases; (3) simple, routine, repetitive tasks; and (4) a low stress work environment with only occasional decision making and changes in the work setting. (AR 27.) In formulating

3

this RFC, the ALJ expressly discounted Wolf's statements concerning her other symptoms and limitations, finding that: (1) her spinal x-rays showed no acute problem; (2) her MRI was insignificant and did not evidence her reported pain; (3) she had at least some use of her left arm; and (4) she provides daily care and feeding to several animals, cooks meals from scratch, drives, shops, and cleans. (AR 30-31.)

The ALJ considered all of the state consultant medical opinions, placing great weight on Dr. Edelman's opinion. (AR 31-32.) In addition, he relied on the testimony of a VE who opined in response to a hypothetical question that Wolf's past relevant work would be precluded by her limitations, but that jobs exist in significant numbers in the national economy that she could perform, assuming Wolf had an RFC consistent with the ALJ's formulation, including usher, counter clerk and record clerk. (AR 34.)

OPINION

Generally speaking, the court finds the ALJ's opinion to be clear and well-reasoned. Even so, for reasons explained below, the ALJ should have developed the record further and he should have addressed more thoroughly three of the four areas challenged by Wolf.

## I. Invalid Waiver of Right to Counsel

Social Security claimants have a statutory right to counsel at a disability hearing. 42 U.S.C. § 406. This right may be waived as long as the evidence shows the claimant did so knowingly. *Ratulowski v. Astrue*, 380 F. App'x 552, 554 (7th Cir. 2010); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). The parties agree that a proper waiver must

4

contain an explanation of:  (a) the benefits of counsel; (b) the possibility of free counsel or a contingency fee arrangement; and (c) the statutory 25% withholding limitation on attorneys' fees, including required court approval of the fees.  *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994); *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991).  If the ALJ does not obtain a valid waiver of counsel, the case must be remanded for a new hearing.  At the same time, the district court can deny remand if satisfied "that the ALJ fully and fairly developed the record."  *Binion*, 13 F.3d at 245-46 (ALJ duty met if he "probes the claimant for possible disabilities and uncovers all of the relevant evidence").  In turn, a claimant can rebut the Commissioner's showing that the ALJ adequately developed the record by demonstrating prejudice or an evidentiary gap.  *Id.*  For example, prejudice may be shown if the ALJ failed to elicit all relevant information.  *Id.*

The ALJ in this case held a prehearing conference at which he purportedly informed Wolf of her right to counsel and had her complete a "Waiver of Representation" form.  There is no evidence, however, that the ALJ obtained a valid waiver because the conference was held off the record, the ALJ does not represent on the record what was discussed (so that the claimant might affirm her understanding) *and* the waiver form itself did not inform Wolf of any of the required elements for a knowing waiver.  (AR 168.)

The Commissioner acknowledges all this, while arguing that it was sufficient for Wolf to acknowledge in writing that she had received a "Notice of Hearing" form (AR 153-54), attached to that form is a document entitled "Your Right To Representation," which includes the required information for Wolf to have made an informed waiver, if

she read it. (AR 167.) The Commissioner argues that this form fully apprised Wolf of her right to counsel.

The Seventh Circuit has not addressed whether the "Your Right To Representation" document satisfies *Thompson* and *Binion*, even if the waiver form fails to attach the document or recite its contents. Still, several district courts have indicated that it can. *See Davis ex rel. J.E.C. v. Colvin*, 2014 WL 4954470, at *7 (E.D. Wis. Oct. 2, 2014) (discussing same issue and summarizing cases). However, as Wolf points out, there is nothing in the record indicating that she either read or understood the information provided in the attachment to her hearing notice. In short, the court has doubts a knowing waiver occurred here, and so remand would be the safer course, at least where there is reason to believe actual prejudice may have resulted.

## II. Prejudice

Regardless of the validity of the waiver, remand would be necessary as an ALJ always has a duty to fully and fairly develop the record when the claimant proceeds without counsel. *Binion*, 13 F.3d at 245 ("The ALJ has this same duty to develop the record when a plaintiff is without counsel regardless of whether the plaintiff's waiver of counsel was valid."); *Davis*, 2014 WL 4954470, at *7. Here, Wolf's lack of counsel likely affected the development of the record and resulted in prejudice to Wolf in two areas--- the consideration of her obesity and the foundation of the VE's testimony.

### A. Obesity

In an attempt to satisfy his duty to consider the possible limiting effects, if any, of Wolf's obesity, the ALJ noted in his decision that no treating or examining physician

made any findings about the severity of plaintiff's obesity or its possible equivalence to a listed impairment. *Evaluation of Obesity*, Soc. Sec. R. 02-1P, 2002 WL 34686281, at *5 (S.S.A. Sept. 12, 2002). Although this is true, it is concerning for two reasons. First, the record did not include *any* opinion from Wolf's treating physicians. Second, the *ALJ* failed to elicit any information at the hearing from Wolf or a medical expert about the possible effects of her obesity. Had Wolf been represented, her attorney would likely have ensured that the ALJ had all of the relevant medical evidence before him before reaching any conclusions with respect to the impact of her obesity given her other limitations. (AR 40-74.)

### B. VE Testimony

SSR 00–4p also imposes an *affirmative* duty on an ALJ to inquire into and resolve any apparent or obvious conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT") on which they rely. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). Here, the ALJ asked the VE whether his testimony was consistent with the DOT, and the VE responded "yes." Wolf correctly notes, however, that neither the DOT nor Selective Characteristics of Occupations (SCO) used by VEs address the specific types of limitations in the ALJ's hypothetical questions, including: one-handed fingering, handling or reaching; decision-making; or changes in work setting. As a result, plaintiff argues that the VE's testimony was by default in conflict with the DOT and SCO, and the ALJ failed in his a duty to resolve that conflict.

In response, the Commissioner argues that (1) the DOT lists maximum job requirements; and (2) the VE merely gave more specific information than contained in

the DOT by identifying specific jobs that someone with Wolf's limitations could perform. The problem with this argument is that nothing in the record shows what the VE based his testimony on, nor for that matter, how he reduced the number and types of jobs available. And, once again, because Wolf was unrepresented, when the ALJ failed to ask the VE about his reasoning or the source of his numbers, there was no attorney present to do so on Wolf's behalf.

Generally, ALJs may rely on VE testimony at step five and administrative notice of "reliable job information," including the DOT. *See* 20 C.F.R. §§ 404.1566(d) and (e), 416.966(d) and (e). In recent decisions, however, the Court of Appeals for the Seventh Circuit has questioned the reliability of the DOT and faulted VEs for relying on it without explaining their methodology. *See, e.g.*, *Voigt v. Colvin*, 781 F.3d 871, 879 (7th Cir. 2015) (DOT "does not contain information on which to base an estimate of the number of available of jobs of a particular kind."); *Herrmann v. Colvin*, 772 F.3d 1110, 1112-13 (7th Cir. 2014) (expressing doubt about accuracy of methodology used by VEs); *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014) (finding "no official source of number of jobs for each job classification in the Dictionary of Occupational Titles, and while there are unofficial estimates of jobs in some categories, the vocational experts do not in general and the vocational expert in this case did not, indicate what those data sources are or vouch for their accuracy").

Neither the court of appeals nor this court has overturned an ALJ's decision on this basis alone. *Fitzgerald v. Colvin*, No. 15-CV-135-BBC, 2016 WL 447507, at *11 (W.D. Wis. Feb. 4, 2016); *Brown v. Colvin*, case no. 14-cv-894-bbc, 2015 WL 7294547, at *7 (W.D. Wis. Nov. 17, 2015). In this case, however, the court's finding that Wolf

8

was prejudiced by the fact that she did not have an attorney to challenge the impact of her obesity on other limitations already found by the ALJ is grounds enough for remand, meaning that the inherent conflicts between her limitations and the jobs identified by the VE provides yet another reason for remand.

### C. Translation of CPP limitations

In a her final challenge to the ALJ's opinion, Wolf argues that the simple, routine, repetitive and low stress work limitations included in her RFC and the hypotheticals posed to the VE fail to account for specific limitations in concentration, persistence, and pace ("CCP") assessed by Dr. Edelman, even though each was purportedly endorsed and adopted by the ALJ with respect to her memory, attention, work pace, adherence to a schedule and adaptation to change. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) ("simple" or "repetitive" work does not address general CPP deficiencies); *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009) (simple, routine tasks did not account for limited ability to understand instructions); *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004) ("simple, routine" tasks did not adequately account for "impairment in concentration"); *Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008) ("simple, unskilled work" does not account for difficulty with memory, concentration, or mood swings).

Relying on recent cases from the Seventh Circuit, the Commissioner argues that the ALJ was entitled to rely on the narrative portion of Dr. Edelman's MFRCA form, which notes that Wolf could perform simple repetitive tasks and the mental demands of unskilled work. (AR 110.) *See Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("[A]n

9

ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations."); *Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2015) ("[T]he ALJ may reasonably rely on the examiner's narrative in Section III, at least where it is not inconsistent with the findings in the Section I worksheet."); *see also Wade v. Colvin*, No. 12-8260, 2014 WL 349261, at *12 (N.D. Ill. Jan. 31, 2014) ("[A]s many other courts have found, the ALJ need only look to Section III for the RFC assessment as directed by the POMS.") (citing cases from other circuits).

In response, Wolf argues that Dr. Edelman's narrative summary is rendered unreliable by its improperly translating his specific section I findings into "simple, repetitive tasks" in violation of the Seventh Circuit's mandate in *O'Connor-Spinner*. In *Varga* and *Capman*, however, the court of appeals was concerned with how the *ALJ* accounted for CPP limitations. The court of appeals has *not* found that *a medical professional* may not translate his or her own section I findings into the ability to perform simple, repetitive tasks. Because Dr. Edelman as an expert did expressly opine that simple, repetitive tasks *would* account for all of Wolf's limitations in CPP, it was not reversible error for the ALJ to rely on that medical opinion in formulating his RFC and hypothetical questions.

ORDER

Accordingly, IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Shelley Wolf's application for disability benefits and supplemental security income is REVERDED and REMANDED

for appointment or a knowing waiver of her right to counsel and a rehearing on the possible effects of Wolf's obesity on her other limitations and a reassessment of Wolf's RFC as set forth more fully above. The clerk of court is directed to enter judgment for plaintiff and close this case.

 Entered this 3rd day of October, 2016.

        BY THE COURT:

        /s/

        _____
        WILLIAM M. CONLEY
        District Judge